**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Enriquez, | No. CV-19-04759-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Gemini Motor Transport LP, | |
| Defendant. | |

Pending before the Court are Gemini Motor Transport LP's ("Defendant") Motion for Summary Judgment (Doc. 65) and Mr. William Enriquez's ("Plaintiff") Motion for Partial Summary Judgment (Doc. 69.)  For the reasons below, both motions are granted and denied in part.

## BACKGROUND

Defendant is a trucking company that delivers fuel and goods to Love's Travel Stops & Country Stores.  (Doc. 66-1 at 2.)  Plaintiff is a Seventh-day Adventist who observes the Sabbath as a tenet of his faith.  (Doc. 69-1 at 4.)  Sabbath lasts from sundown Friday to sundown Saturday.  In July 2017, Defendant interviewed Plaintiff for a position as a fuel delivery driver.  Although Plaintiff testified that he disclosed that he observed the Sabbath during his interview, Defendant contests this fact.  Plaintiff was ultimately offered—and accepted—a Freight Driver position with Defendant.

Plaintiff began work as a Freight Driver in August 2017.  During Plaintiff's brief

time with Defendant, Plaintiff worked approximately two Saturdays that disrupted his Sabbath observance and caused him to miss church.  When Plaintiff was scheduled to work another Saturday in September, Plaintiff informed Defendant that he could not accept the route because working on Saturday was against his religion.  Another employee ultimately covered the route.

After the September incident, Ruben Astorga ("Mr. Astorga"), Regional Manager for Defendant, discussed the matter with Plaintiff on a phone call.  That phone call was recorded.  Although the parties dispute what occurred during the call, it ended with Plaintiff no longer being employed by Defendant.  Plaintiff then filed a charge with the EEOC and later commenced this lawsuit, alleging various claims under Title VII and Arizona law.

## I.  Plaintiff's Motion to Strike Contained in His Response to Defendant's Motion for Summary Judgment

The Court will consider Plaintiff's Motion to Strike contained in his Response because it is not procedurally improper.  Although parties may not file a separate motion to strike evidence, the parties may make an "argument regarding[] the admissibility of evidence offered in support of or opposition to a motion . . . in the objecting party's responsive or reply memorandum."  LRCiv. 7.2(m)(2).  All of Defendant's cited cases are either inapposite because the objecting party filed a motion to strike separate from the underlying motion, or because the court was relying on an older version of the local rule. *See Larson v. United Nat. Foods. W., Inc.*, No. CV-10-185-PHX-DGC, 2010 WL 5297220, at *1 (D. Ariz. Dec. 20, 2010); *Lexington Ins. Co. v. Scott Homes Multifamily, Inc.*, No. CV-12-02119-PHX-JAT, 2014 WL 231989, at *1 (D. Ariz. Jan. 22, 2014); *Gil v. JP Morgan Chase Bank, NA*, No. CIV 07-0181-PHX-SMM, 2009 WL 1628876 (D. Ariz. June 10, 2009).[1]  Moreover, Defendant ignores 7.2(m)(1), which expressly permits motions to

---

[1] The *Gil* court was applying the 2008–09 local rule, which required objections to evidence in a summary judgment motion to be in the responsive statement of facts: "An objection to the admission of evidence . . . must be presented in the objecting party's responsive or reply memorandum (or, if the underlying motion is a motion for summary judgment, in the party's response to another party's separate statement of material facts)."  LRCiv. 7.2(m)(2) (2008).  Notably, the present version of the rule now states, "If the underlying motion is a motion for summary judgment, an objection may be included in a party's response to another party's separate statement of material facts *in lieu of (or in addition to)*

strike that "seek[] to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order."  Plaintiff's Motion will be considered.

### A.  Legal Standard

#### 1.  MIDP Deadlines

This case is governed by the Mandatory Initial Disclosure Pilot ("MIDP") project, which significantly alters the discovery rules contained in the Federal Rules of Civil Procedure.  (Doc. 5.)  In contrast to the Federal Rules, MIDP requires that all parties disclose "facts that are relevant to the claims and defenses in the case, whether favorable or unfavorable, and regardless of whether they intend to use the information in presenting their claims or defenses."  (Doc. 5 at 4.)  MIDP also requires the parties to supplement their mandatory disclosures "in a timely manner, but in any event no later than 30 days after the information is discovered by or revealed to the party."  (Doc. 5 at 5.)

Because MIDP applies, the parties were under an affirmative obligation to supplement their initial disclosures until the end of fact discovery.  (Doc. 5 at 6.)  The deadline for all supplementation in this case was February 5, 2021.  (Doc. 51 at 1.)  Therefore, all exhibits or facts therein must have been disclosed by that date to be considered on summary judgment.  (Doc. 5 at 6); Fed. R. Civ. P. 37(b)(2).

#### 2.  Evidentiary Standard at Summary Judgment

At oral argument, the parties noted that there is a split of authority on what evidence may be considered at summary judgment.  Because both parties make multiple evidentiary objections, the Court finds it necessary to survey the relevant law to ascertain the correct legal standard.

*Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003), is the leading case for the general evidentiary rule on summary judgment: "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its

---

*including it in the party's responsive memorandum*."  LRCiv. 7.2(m)(2) (2020) (emphasis added).

contents." *Id.* at 1036. *Fraser* involved the admission of the plaintiff's diary in opposition to a motion for summary judgment. *Id.* at 1036–37. Some courts, including this one, have hewn to the precise context of *Fraser*, holding that its relaxed standard applies *only to the non-moving party*. *See, e.g.*, *Cook v. Lee*, No. CV 17-02569-PHX-DGC, 2019 WL 2525373, at *3 n.3 (D. Ariz. June 19, 2019) ("[T]his focus on the content over the form of evidence at the summary judgment stage applies to the *nonmovant*[.]"); *Walters v. Odyssey Healthcare Mgmt. Long Term Disability*, No. CV-11-00150-PHX-JAT, 2014 WL 4371284, at *3–4 (D. Ariz. Sept. 4, 2014) ("[E]vidence offered in support of a motion for summary judgment [must] be admissible both in form and in content."); *Williams v. Trujillo*, No. CV 18-03239-PHX-MTL, 2021 WL 4439466, at *2 (D. Ariz. Sept. 28, 2021); *cf. Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) ("We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment.").

Other courts, including the Ninth Circuit, have interpreted *Fraser* more liberally, applying it to both the moving and nonmoving party. *See, e.g.*, *Jeffries v. Las Vegas Metro. Police Dept.*, 713 F. App'x 549, 550–51 (9th Cir. 2017) (holding that the district court "did not err in considering the exhibits attached to the Department's motion for summary judgment . . . [because] a district court may consider inadmissible evidence as long as the evidence could be presented in an admissible form at trial"); *Lober v. DeJoy*, 845 F. App'x 672, 673 (9th Cir. 2021) ("The district court did not abuse its discretion by overruling Lober's objections to defendant's evidence in support of summary judgment, because such evidence was not inadmissible hearsay, or was capable of being provided in admissible form at trial."); *Santa Ana Police Officers Ass'n v. City of Santa Ana*, 723 F. App'x 399, 402 (9th Cir. 2018) (holding that the district court did not err by considering the defendant's exhibits on summary judgment because they "could be presented in an admissible form at trial"); *Zakiya v. Nevada*, No. 2:18-cv-00846-APG-BNW, 2020 WL 1639858, at *1 n.1 (D. Nev. Apr. 2, 2020) (holding that the moving party "need not present [evidence] in admissible form at summary judgment"); *Luna v. Moon*, No. 1:16-cv-00313-NONE-SAB, 2020 WL 1904827, at *11 n. 15 (E.D. Cal. Apr. 17, 2020) (same).

The controversy seems to stem from whether the 2010 amendments to Rule 56 altered the evidentiary standard courts should employ at summary judgment.  *See Does v. Elson S Floyd Coll. of Med.*, No. 2:20-cv-00145-SMJ, 2021 WL 3375725, at *4 (D. Nev. Aug. 3, 2021) ("[T]he 2010 Amendments to Federal Rule of Civil Procedure 56 only require that the *substance* of the proffered evidence . . . be admissible at trial[.]")  Amended Rule 56(c)(2) states, "A party may object that the material cited to support or dispute a fact cannot be presented *in a form* that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2) (emphasis added).  The committee notes to the amended rule state, "The burden is on the proponent to show that the material is admissible as presented *or to explain the admissible form that is anticipated.*"  Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment (emphasis added).  The language of both the rule and the committee notes do not distinguish between the movant and nonmovant but broadly state "a party" and "the proponent."  This language indicates that so long as the evidence can be presented in an admissible form, strict compliance with the Federal Rules of Evidence is not required for either party on summary judgment.  10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2722 (4th ed. 2021); *cf. Sweet People Apparel, Inc. v. Phoenix Fibers*, 748 F. App'x 123, 126 (9th Cir. 2019) (Dorsey, J., dissenting) ("[D]istrict courts in this circuit (and the litigants who practice before them) would be well served by guidance on the continued viability of *Orr* after the 2010 amendment to Rule 56.").  Following the language of the Rule and the committee notes, therefore, this Court holds that so long as the proponent can show that the contents of an exhibit will be admissible at trial, it can be considered on summary judgment regardless of its form.  *Cf. Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666–67 (9th Cir. 2021) ("If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment.")

**B.  Motion to Strike Defendant's Motion for Summary Judgment**

Plaintiff's Motion to Strike Defendant's Motion is denied because Plaintiff cites to

no authority that requires a "Notice of Motion" to be filed in this district. Neither Federal Rule of Civil Procedure 56 nor the Local Rules require any such "Notice of Motion" to be filed. The Court will consider Plaintiff's evidentiary arguments in turn.[2]

### C. Declaration of Jake Stieber (Exhibit 7)

Defendant failed to disclose HR Representative Jake Stieber ("Mr. Stieber") as a witness in its supplemental disclosures. (Doc. 85 at 6.) However, Defendant did disclose a "Custodian of Records/HR Representative . . . to lay foundation for Defendant's file and documentation." (Doc. 78-2 at 86.) Most of the underlying facts and all exhibits referenced in the declaration were disclosed pursuant to MIDP. (Doc. 78-2 at 87.) Mr. Stieber's declaration generally authenticates facts and documents that were already disclosed, (Doc. 78-2 at 87–88); (Doc. 66-7), so it should be of no surprise to Plaintiff that an HR representative would lay a foundation for Defendant's evidence. The Court will consider Mr. Stieber's declaration to the extent it authenticates evidence and establishes his personal knowledge.

However, to the extent that Mr. Stieber's declaration offers substantive evidence as to Defendant's "hiring and firing practices," (Doc. 66-7 at 2), these paragraphs are outside the scope of Defendant's disclosure. Therefore, at least at present, Plaintiff's Motion to Strike is granted as to paragraphs twelve through fifteen.

### D. Declaration of Beth Conner (Exhibit 26) and Exhibits 27 and 28

Ms. Conner was not disclosed pursuant to MIDP, (Doc. 85 at 6), and her declaration seeks to authenticate two exhibits offered in support of Defendant's Motion. (Doc. 68-5.) However, even if the Court were to consider Ms. Conner's declaration, her testimony is insufficient to authenticate Exhibit 27, an excel spreadsheet of her own research, and Exhibit 28, a PDF of a webpage listing convictions of "Enriquez, William." Exhibit 27 is hearsay, and Exhibit 28 is unauthenticated. The Court does not see how either would be admissible at trial. Regardless, because neither Exhibit 27 nor 28 affects the merits of the

---

[2] To the extent that Plaintiff objects to evidence based on Federal Rules of Evidence 601 and 602, these objections are denied on those grounds. Defendant has met its summary judgment burden of showing competency and personal knowledge of its evidence.

underlying summary judgment motion, Plaintiff's Motion to Strike Ms. Conner's declaration and attached exhibits is denied.

### E.  Plaintiff's Motion to Strike Exhibits 1, 4, 11, and 21

#### 1.  Declarations of Ruben Astorga and Brandon Hall (Exhibits 1 and 21)

Plaintiff contends that Mr. Astorga's and Brandon Hall's ("Mr. Hall") declarations should be stricken because they are unauthenticated and hearsay.  However, because the Court finds that neither declaration would change the ultimate outcome on the relevant issue—undue hardship—Plaintiff's Motion is denied.

#### 2.  Fann Contracting (Exhibit 4)

Plaintiff moves to strike Exhibit 4 because it is unauthenticated and hearsay.  However, Exhibit 4 can be authenticated at trial by the Custodian of Records from Fann Contracting.  Although the Court declines to consider the Custodian's declaration on its merits because of Defendant's late disclosure to the Court,[3] the Court does note that the declaration was disclosed to Plaintiff.  (Doc. 78-2 at 87; Doc. 96-1 at 26.)  Moreover, in its supplemental disclosure, Defendant indicated that it would call "all necessary foundation witnesses *including those from plaintiff's previous or subsequent employers*."  (Doc. 78-2 at 86 (emphasis added).)  Plaintiff cannot claim surprise by Defendant calling a witness to lay a foundation for these records, which were disclosed properly under MIDP.  Because Exhibit 4 can be authenticated at trial, it is not excludable on that ground.

Exhibit 4 is also not inadmissible hearsay.  "Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c).  "Statement" means "*a person's* oral assertion, written assertion, or nonverbal conduct." *Id.* 801(a).  The only "person" plausibly making an assertion in these records is Plaintiff: his name is on the document, and the record was made, presumably, as Plaintiff documented his time on the job.  Therefore, if these records even meet the hearsay definition at all, they are the

---

[3] Defendant failed to provide the declaration to the Court with its summary judgment motion.  Instead, Defendant filed a Notice of Errata, (Doc. 96), the day before oral argument, which attached the declaration.

statements of a party opponent and thus admissible.  *Id.* 801(d)(2).[4]

### 3. Julio Anaya's Notes (Exhibit 11)

Plaintiff next moves to strike Julio Anaya's ("Mr. Anaya") notes from his interview with Plaintiff.  Again, Plaintiff contends that the notes are unauthenticated and hearsay.  Because the Court finds that the notes do not affect the merits of the underlying motions, Plaintiff's Motion is denied.

### F.   Plaintiff's Motion to Strike Witnesses Disclosed on the Last Day of Discovery

Plaintiff also asks the Court to strike the fourteen witnesses disclosed to Plaintiff on February 5—the fact discovery deadline.  (Doc. 78 at 7.)  Because such a motion is relevant to trial but not to summary judgment, the Court declines to make a ruling at this time.  Nevertheless, Defendant's last-minute designation would have prevented Plaintiff from conducting any discovery concerning such witnesses.  Defendant, therefore, should not expect that any such witnesses will be allowed to testify at trial, except to the extent, if any, that Defendant seeks and is allowed to reopen discovery and designate such witness's testimony as a remedy for Plaintiff's failure to appropriately disclose his past criminal convictions.  (Doc. 98.)  However, although a few witnesses *may* be permitted in this way, not all of the fourteen will be.  As this court previously informed the parties: "[p]arties who fail to timely disclose relevant information will be precluded from using it in the case and may be subject to other sanctions.  Parties who unreasonably postpone disclosure of relevant information to the end of the discovery period will also be subject to sanctions."  (Doc. 21 at 2 n.1.)

## II. Defendant's Evidentiary Objections

### A. Transcript of Phone Conversation Between Mr. Astorga and Plaintiff

Defendant argues that the Court should not consider the transcript of Plaintiff's conversation with Mr. Astorga that resulted in the end of Plaintiff's employment with Defendant.  (Doc. 80 at 3–4.)  Although it is true that Plaintiff quotes the transcript and

---

[4] Moreover, the documents are likely business records, which the Custodian of Records could establish at trial.  *See Sandoval*, 985 F.3d at 666; Fed. R. Evid. 803(6).

1   fails to cite to it in his Statement of Facts, (Doc. 70 at 6–7), it will not be precluded.  One

2   does not have to "scour the record" to discern what Plaintiff is quoting.  *Keenan v. Allan*,

3   91 F.3d 1275, 1279 (9th Cir. 1996).  SOF ¶ 19 states, "Mr. Astorga called [Plaintiff] to

4   discuss his work schedule.  This call was recorded and transcribed.  Mr. Astorga has

5   confirmed the accuracy of both the audio recording and the transcription." (Doc. 70 at 6.)

6   SOF ¶ 20 begins by stating "[i]n this call" and then proceeds to quote at length from the

7   conversation.  It is, therefore, perfectly clear where in the record Plaintiff was citing to.

8   Moreover, the transcript was disclosed, (Doc. 69-2 at 128),[5] and Defendant will not be

9   harmed by the Court's consideration of the transcript.  The call was referenced in Plaintiff's

10  complaint, (Doc. 1 at 4–5), and it is vital to several of Plaintiff's claims in this case.

11  Defendant cannot claim surprise by its appearance at summary judgment.  Therefore, the

12  Court will consider the transcript.[6]

13  **B.  Exhibits 1, 3, and 5 to Plaintiff's Declaration and Exhibit A-22**

14  Defendant objects to Exhibits 1, 3, and 5 to Plaintiff's declaration in its Reply, (Doc.

15  85 at 1), and to "Enriquez Dec. Exhibit 1 and Exhibit A-22" in its Response to Plaintiff's

16  Motion, (Doc. 80 at 4.)

17  **1.  Exhibits 1, 3, and 5**

18  Exhibit 1 to Plaintiff's Declaration is a Certificate of Baptism for William Enriquez

19  in both Plaintiff's Motion, (Doc. 69-3 at 1–5), and Plaintiff's Response to Defendant's

20  Motion, (Doc. 78-3 at 1–5).  Because the Court finds that consideration of Exhibit 1 will

21  not change the result on its ruling for summary judgment—whether Plaintiff had a bona

22  fide religious belief—Defendant's objection is overruled.

23  Although Defendant next objects to Exhibit 3, it appears that Defendant may have

24  intended to object to other evidence.  Exhibit 3 to Plaintiff's declaration, contained in

---

25
26  [5] "If new information is revealed in a written discovery response or a deposition in a manner that reasonably informs all parties of the information, the information need not be presented in a supplemental response." (Doc. 5 at 6.)

27
28  [6] Defendant also objects to Exhibit 4 of Plaintiff's declaration—the transcript—because it is unauthenticated.  (Doc. 85 at 1); (Doc. 78-4 at 4–11.)  Mr. Astorga testified to the transcript's accuracy, (Doc. 69-2 at 127–28), and, as stated above, the Court finds no reason not to consider it at summary judgment.

1    Plaintiff's Response, (Doc. 78), is the alleged audio of the "termination phone call,"

2    (Doc. 78-4 at 3), but Defendant's Reply to Plaintiff's Response, (Doc. 85), refers to a letter

3    with a post-marked date of September 29, 2017.  (Doc. 85 at 1.)  This letter is not Exhibit

4    3 to Plaintiff's declaration but Exhibit F-3 to Anthony Jaspar's deposition.  (Doc. 78-2 at

5    58–59, 68–71.)  The Court will therefore construe the objection to "Exhibit 3 to Plaintiff's

6    declaration" as an objection to Exhibit F-3 to Mr. Jaspar's deposition.  Because the Court

7    finds that Exhibit F-3 does not affect its ruling on the underlying Motions, Defendant's

8    objection is overruled.

9         Defendant objects to Exhibit 5 of Plaintiff's declaration.  Exhibit 5 appears to be a

10   picture of a text message conversation involving "Loves Ruben."  (Doc. 78-4 at 12–14.)

11   Because the Court finds that Exhibit 5 has no effect on the merits of Plaintiff's claim—

12   whether Plaintiff resigned or was fired—Defendant's objection is overruled.

13             **2.  Exhibit A-22**

14        Defendant finally objects to Plaintiff's Exhibit A-22.  (Doc. 80 at 4.)  Exhibit A-22

15   is Plaintiff's handwritten notes that document Plaintiff's interactions with Defendant.

16   (Doc. 69-2 at 93–102.)  Because the Court finds that Exhibit A-22 does not affect the merits

17   of the underlying motion, the Court overrules the objection.

18        **C.  Miscellaneous Objections**

19        Defendant objects to the legal arguments and additional facts contained in Plaintiff's

20   Controverting Statement of Facts.  (Doc. 85 at 2–3.)  It also objects to Plaintiffs' facts

21   unsupported by citations, as well as Controverting Fact 58.  (Doc. 85 at 3.)  The Court will

22   not consider the legal arguments and unsupported assertions solely contained in the

23   Controverting Statement of Facts; however, to the extent that Plaintiff properly supports

24   and labels his factual and legal arguments in his other documents, the Court will consider

25   them on that basis.  Moreover, although it is true that Plaintiff sometimes fails to support

26   the facts used in his legal analysis with citations, citations are provided in the "Statement

27   of Facts" section.  (Doc. 78 at 4–6); (Doc. 69-1 at 4–7.)  To the extent that the Court can

28   ascertain the record basis for an assertion based on the "Statement of Facts" citation, the

Court will consider Plaintiff's factual claims.

## III. Motions for Summary Judgment and Partial Summary Judgment

### A. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan*, 91 F.3d at 1279.

### B. Statute of Limitations

Defendant argues that Plaintiff's state-law claims are barred by the statute of limitations. (Doc. 65 at 4.) "When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). State substantive law includes the state statute of limitations. *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). Federal courts must also "abide by a state's tolling rules, which are integrally related to statutes of limitations." *Id.*

Here, the Arizona Civil Rights Act ("ACRA") states that "*[i]n no event* shall any action be brought pursuant to this article more than one year after the charge to which the action relates has been filed." Ariz. Rev. Stat. § 41-1481(D) (emphasis added). Although no Arizona court has directly addressed equitable tolling involving the one-year statute of limitations, the statutory language seems to foreclose such a result. Moreover, several federal cases have refused to apply equitable tolling under the ACRA when the plaintiff's sole reason for delay was a belated notice of the right to sue. *See, e.g.*, *Wood v. Univ. Physicians Healthcare*, No. CV-13-00063-PHX-JAT, 2014 WL 3721207, at *14 (D. Ariz. July 28, 2014); *Strand v. John C. Lincoln Health Network, Inc.*, No. CV-10-02112-PHX-NVW, 2011 WL 1253408, at *2 (D. Ariz. Mar. 31, 2011); *cf. Reed v. Pioneer Landscaping Materials Inc.*, No. CV 09-593-TUC-RCC, 2010 WL 11515553, at *4 (D. Ariz. Sept. 1, 2017) ("The ACRA requires that a party file a complaint within one year of the date that charges were filed with the Arizona Civil Rights Division, or within the 90 day-period after receipt of the Notice of Right to Sue, whichever comes first.").[7]

Even assuming, however, that equitable tolling can be applied under § 41-1481(D), Plaintiff has failed to show why it should apply to him. Because Plaintiff filed his charge on December 5, 2017, (Doc. 68-3 at 2), he had until December 5, 2018 to file this lawsuit. Instead, Plaintiff did not file until July 18, 2019—well after the statute of limitations had expired. (Doc. 1.) Although Plaintiff may not have received his notice of right to sue until June 2019,[8] Plaintiff could have requested the notice from the Equal Employment Opportunity Commission ("EEOC") after his charge had been pending 180 days. 42 U.S.C. § 2000e-5(f)(1); *see also Smith v. Johnson*, No. C 11–4823 MMC, 2012 WL 1438898 (N.D. Cal. Apr. 25, 2012) ("Before filing a complaint under Title VII, a plaintiff ordinarily files a charge with the [EEOC] and, if . . . the EEOC fails to so act on the charge

---

[7] *Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322, 1324–25 (9th Cir. 1987), is inapposite because the court was interpreting California law, which did not include the "in no event" language present in Ariz. Rev. Stat. § 41-1481. *Id.* at 1324 n.1; 1984 Cal. Stat. 1792. Moreover, the California statute of limitations was based on when the notice of the right to sue was issued, not when the charge was filed. 823 F.2d at 1324 n.1; 1984 Cal. Stat. 1792.

[8] Although Plaintiff neither made this argument nor attached the Notice to his Response, the Notice was attached as Exhibit A to the Complaint. (Doc. 9.)

1   within 180 days, the plaintiff may file suit without such letter.").  Plaintiff has offered no

2   justification for his failure to do so.  In the absence of such justification, the Court will not

3   apply equitable tolling.  Defendant's Motion for Summary Judgment is granted on this

4   ground.

5        **C.  Retaliation**

6          To make out a prima facie case of retaliation under Title VII, Plaintiff must

7   demonstrate that (1) he engaged in a protected activity, (2) he suffered an adverse

8   employment action, and (3) there was a causal link between his activity and the

9   employment decision.  *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065–66 (9th Cir.

10   2003).  If the plaintiff can show all three elements, the burden shifts to the defendant "to

11   articulate a legitimate, non-discriminatory reason for the adverse employment action."  *Id.*

12   at 1066.  If the defendant provides the required reasoning, the plaintiff "bears the ultimate

13   burden of demonstrating that the reason was merely a pretext for [retaliation]."  *Id.*

14        **1.  Prima Facie Case**

15          **a.  Engaged in Protected Activity**

16          Title VII makes it illegal for employers to "discriminate against any individual . . .

17   because he has opposed any practice made an unlawful employment practice by this

18   subchapter, or because he has made a charge, testified, assisted, or participated in any

19   manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C.

20   § 2000e-3(a).  Although the Ninth Circuit has not decided whether requesting a religious

21   accommodation constitutes "oppos[ing] . . . an unlawful employment practice," the Eighth

22   Circuit has determined that it does not.  *EEOC v. N. Memorial Health Care*, 908 F.3d 1098

23   (8th Cir. 2018).  Many courts, however, have held that accommodation requests are a

24   protected activity under Title VII.  *See, e.g.*, *Privler v. CSX Transp., Inc.*, No. 1:18-cv-1020

25   (BKS/CFH), 2021 WL 3603334, at *19 (N.D.N.Y. Aug. 13, 2021) (collecting cases);

26   *EEOC v. JBS USA, LLC*, 339 F. Supp. 3d 1135, 1193 (D. Colo. 2018); *Creusere v. Bd. Of*

27   *Educ.*, 88 F. App'x 813, 821 (6th Cir. 2003); *Williams v. Wal-Mart Assocs. Inc.*, No. 2:12–

28   cv–03821–AKK, 2013 WL 979103, at *3 (N.D. Ala. Mar. 8, 2013).  This line of cases is

consistent with the Ninth Circuit's holding that the Title VII and ADA framework for retaliation are the same. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) (adopting the Title VII retaliation framework for ADA retaliation claims), *vacated on other grounds*, 535 U.S. 391 (2002); *Piccarreta v. Harmony Hospice of Scottsdale*, No. CV–12–00533–PHX–DGC, 2013 WL 6118641, at *3 (D. Ariz. Nov. 21, 2013) (collecting cases and holding that requests for accommodations are protected activity under the ADA).

Although the Court acknowledges the contrary Eighth Circuit precedent, the retaliation provisions of both Title VII and the ADA do not materially differ.[9] Requesting an accommodation under the ADA is clearly a protected activity, and the Court finds no reason why the analysis should differ under Title VII. Moreover, failure to accommodate is an existing cause of action under Title VII, and it would contravene the purpose of the statute if the act that triggers an employer's duty to make reasonable accommodations[10] could legally be the basis for a later adverse employment action. Employers could simply intimidate employees to deter them from making accommodation requests out of fear of retaliation, which is exactly what the Title VII antiretaliation provision is designed to avoid. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (holding that an adverse employment action is an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination"). Therefore, in the absence of contrary Ninth Circuit authority, the Court holds that requesting a religious accommodation is a protected activity.

Here, Plaintiff clearly engaged in a protected activity by making a request for a religious accommodation. Plaintiff informed Mr. Anaya that he could not work the

---

[9] The relevant language under the ADA is "because such individual has opposed any act or practice made unlawful by this chapter," 42 U.S.C. § 12203(a), and the relevant language under Title VII is "because he has opposed any practice made an unlawful employment practice by this subchapter," 42 U.S.C. § 2000e-3.

[10] The Court recognizes that *Abercrombie* likely abolished the requirement that an employee make a formal accommodation request to trigger liability for failure to accommodate. 575 U.S. at 773. As *Abercrombie* noted, "the intentional discrimination provision prohibits certain *motives*, regardless of the state of the actor's knowledge." *Id.* However, *Abercrombie*'s holding does not mean that a plaintiff who actually makes an accommodation request may be denied relief merely because they did more than what was legally required.

Saturday he was scheduled because of his religion, and Mr. Anaya covered the route. (Doc. 69-2 at 41); (Doc. 67-7 at 11–12.)  About two weeks later, on September 24, Mr. Astorga and Plaintiff discussed Plaintiff's request for a religious accommodation. (Doc. 78-4 at 6–8); (Doc. 81 at 7.)  That meeting was recorded, and the following exchange occurred:

> [Plaintiff]: And if I can't work Saturdays, then I'm fired; right?
> [Mr. Astorga]: We'll see.  Most likely, simón [in Spanish].  That's it.
> . . .
> [Plaintiff]:  I could tell you where I stand. It's the same – it's the same story. It's not going to change. The same thing I told Julio [Mr. Anaya], I'm going to tell you . . . *I can't work Saturdays because that's my religion*, that's our worship, and that's – I keep the Sabbath and I follow the Exodus 20. And you can call it worship, whatever you want, you know. I mean, that's what I call it, that's how I do it. I keep the Sabbath. I'm a Sabbath keeper.

(Doc. 69-3 at 9–11 (emphasis added).)   Plaintiff, therefore, made two requests for accommodation: one to Mr. Anaya and one to Mr. Astorga.  Defendant does not dispute that these two conversations occurred.  (Doc. 66 at 6–7.)  Plaintiff's Motion is granted on this ground, and this element of his prima facie case is conclusively established.[11]

### b.  Adverse Employment Action

"[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000).  The Ninth Circuit's takes an "expansive view" of such actions. *Id.* at 1241.  Clearly, therefore, termination is an adverse employment action. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  After the exchange above—in which Mr. Astorga essentially told Plaintiff that he had to work Saturday or "most likely" be fired—Plaintiff and Mr. Astorga also had the following exchange on the same phone call:

> [Mr. Astorga]: [I]f you're telling me that – that it's not going to change, then why even – why even continue it going any further?  You know, let's just call it your last week and – and that's it?

---

[11] Pursuant to Federal Rule of Civil Procedure 56(g), if a court "does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute" is established in the case.  Fed. R. Civ. P. 56(g).

1
2
3
4

> [Plaintiff]: Okay.  So – all right.  Well, that's – that's what it is, you know, I can't work because of that and that's my religion and that's my right.  So you're saying last week was going to be my last week?
> [Mr. Astorga]: Well – well, simón [in Spanish].  Yeah, yeah, because I'll get you off the schedule, definitely, then.

5

(Doc. 78-4 at 7.)

6
7
8
9
10
11
12
13
14
15
16

The call transcript establishes that Plaintiff did not resign voluntarily but was fired for not working Saturdays.  In addition to Mr. Astorga telling Plaintiff he would "most likely" be fired, Plaintiff clearly stated that he was not agreeing with Defendant's decision but would "respect [its] wishes." (Doc. 69-3 at 10–11.)  Although Plaintiff's departure was processed as a "resignation," (Doc. 78-2 at 77), and Mr. Astorga testified that he believed Plaintiff had resigned, (Doc. 67-7 at 22), this evidence is insufficient to overcome the clear import of the phone call.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")  Plaintiff's Motion is granted on this ground, and Defendant's Motion is denied.

17

### c.  Causal Link

18
19
20
21
22
23

To establish a causal link between Plaintiff's protected activity and the adverse employment action, Plaintiff must show that his protected activity was the but-for cause of the adverse action.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  In this case, Plaintiff's protected activity was his request for a religious accommodation.  Therefore, the critical inquiry is whether Defendant allegedly terminated Plaintiff because of that request.[12]

24
25
26

On September 24, Mr. Astorga sent Plaintiff a text message telling him he had been removed from the schedule.  (Doc. 78-2 at 76.)  Plaintiff then called Mr. Astorga, resulting

27
28

---

[12] Although Defendant argues that Plaintiff must show more than temporal proximity to establish causation, (Doc. 80 at 11), Plaintiff has done so here.  Mr. Astorga's failure to investigate whether Plaintiff's request was feasible, coupled with the alleged termination phone call, demonstrates that regardless of any hardship, Plaintiff's request was denied merely by virtue of Plaintiff having made it.

in the following discussion:

> [Plaintiff]: What's – what's the purpose of the meeting?  What's your –
>
> . . .
>
> [Mr. Astorga]: My main point is that . . . *you can't work Saturdays*.  You know, you can't work Saturdays.  You know, I need some [expletive] information, wey [in Spanish].  If not, we got to move on.
>
> . . .
>
> [Mr. Astorga]: I mean, I – *I need guys to work Saturdays*.  I really do, man.  I mean, nothing personal, brother.  You know, you're a – you're nice.  I like you and all, but *if you can't, you can't*.
>
> [Plaintiff]: Yeah.
>
> . . .
>
> [Mr. Astorga]: [B]ut – but that's okay if you're telling me that – that it's not going to change, then why even – why even continue in going any further?  You know, let's just call it your last week and – and that's it?
>
> . . .
>
> [Mr. Astorga]: [Y]eah, yeah, because you – yeah, because we get in a bind here, brother.  You know, it's – it's nothing – nothing against your religion, nothing against you.  [Plaintiff] is a – I mean, you stand for what you stand for, but I got to cover – *I got to cover [expletive] schedules*, dude, you know.  And – and *we are a 365-day company* and we never close.  This is a truck stop.
>
> [Plaintiff]: Yeah.
>
> [Mr. Astorga]: Even if it's Christmas.  If it's Christmas, you work.  *If you're on schedule, you work*.  You know, everybody knows this.  You know, I don't like the rules and we just follow them and that's what it calls for.

(Doc. 69-3 at 9–10 (emphasis added)).  Per Mr. Astorga's testimony, Mr. Astorga did not take any steps prior to the phone call to determine whether Plaintiff could continue to be employed by Defendant without working Saturdays.  (Doc. 78-1 at 102–03.)  Instead, once Mr. Astorga confirmed that Plaintiff had requested all Saturdays off, Plaintiff was terminated.  Moreover, during the phone call itself, Mr. Astorga repeatedly referenced the work schedule and told Plaintiff that it's "nothing personal," "nothing against you," and that Plaintiff is "nice."  Mr. Astorga apparently had no problem with Plaintiff other than his request for accommodation.  Because no genuine issue of material fact exists as to whether Plaintiff's request for a religious accommodation caused the allegedly adverse employment action, Plaintiff's Motion is granted, and the causation element of the prima

1  facie case is conclusively established.  Because all three elements of Plaintiff's prima facie

2  case have been established, Plaintiff is entitled to summary judgment on these issues, and

3  the burden shifts to Defendant to establish a legitimate, non-discriminatory reason.

4  **2.  Legitimate, Nondiscriminatory Reason**

5  Once a plaintiff establishes a prima facie case, the burden shifts to the defendant "to

6  articulate a legitimate, non-discriminatory reason for the adverse employment action."

7  *Stegall*, 350 F.3d at 1066.  Here, Defendant contends that it could not both operate its

8  business and allow Plaintiff to take every Saturday off.  (Doc. 65 at 9–10.)  As explained

9  in the "undue hardship" analysis below, Defendant held itself out as a week-long operation,

10  but Defendant's employees testified that there was some flexibility in the scheduling that

11  was apparently not explored as an option for Plaintiff.  *Supra* Section D.2.  Because there

12  is conflicting evidence on this point, a genuine issue of material fact exists as to whether

13  Defendant can establish a nondiscriminatory reason for Plaintiff's termination.

14  Accordingly, both Motions are denied on this ground.

15  **D.  Disparate Treatment Discrimination/Failure to Accommodate**

16  Plaintiff relies on the same facts to establish disparate treatment as he does for

17  failure to accommodate.  (Doc. 69-1 at 7–13); (Doc. 78 at 12–13.)  However, the very case

18  Plaintiff repeatedly cites as supportive of his position—*E.E.O.C. v. Abercrombie &*

19  *Fitch*—establishes that failure to accommodate is not a freestanding, separate claim: It is

20  one way of proving disparate treatment.  575 U.S. 768, 771-72 (2015) ("These two

21  proscriptions, often referred to as the 'disparate treatment' (or 'intentional discrimination')

22  provision and the 'disparate impact' provision, *are the only causes of action under Title*

23  *VII* (emphasis added)); *see also Jean-Pierre v. Naples Comm. Hosp., Inc.*, 817 F. App'x

24  822, 828 (11th Cir. 2020); *Walker v. Indian River Transp. Co.*, No: 8:15–cv–2246–T–

25  27TGW, 2017 WL 388921, at *2 (M.D. Fla. Jan. 27, 2017); *Privler*, 2021 WL 3603334, at

26  *12 & n.10; *Al Refat v. Franklin Fin. Servs. Corp.*, No. 1:19-CV-1507, 2021 WL 2588789,

27  at *3 n.2 (M.D. Pa. June 24, 2021).  Although Plaintiff is welcome to establish disparate

28

treatment on different facts, he has not done so here.[13]  *See Dykzeul v. Charter Commc'ns, Inc.*, No. CV 18-05826 DSF (GJSx), 2019 WL 8198218, at *10 (C.D. Cal. Nov. 18, 2019) ("Plaintiff's claim fits more naturally under the failure to accommodate rubric and it would be superfluous if the same facts supported liability under Title VII for both failure to accommodate and disparate treatment.")  Because Plaintiff's claim is more properly characterized as a "disparate-treatment claim[] based on a failure to accommodate," *Abercrombie & Fitch*, 575 U.S. at 773, the Court will analyze the claims under a single failure to accommodate framework.  *See, e.g.*, *id.*; *Jean-Pierre*, 817 F. App'x at 828.

To establish a prima facie case for failure to accommodate, the plaintiff must show that "(1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement."[14]  *Peterson*, 358 F.3d at 606. If the plaintiff establishes all three elements, the burden then shifts to the defendant to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship."  *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998).

No party disputes that Plaintiff informed Defendant of his religious belief and conflict.  Moreover, as established above, no reasonable jury could find that Plaintiff resigned.  Therefore, the Court will analyze only the first element to determine whether Plaintiff has established a prima facie case.  The Court will then consider undue hardship.

### 1. Bona Fide Religious Belief

Bona fide religious beliefs are "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."  29 C.F.R.

---

[13] Although Plaintiff does argue liability under a different set of facts in his Reply, (Doc. 86 at 9–10), the Court will not consider arguments made for the first time in a Reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

[14] The "knowledge" requirement has since been relaxed by *Abercrombie*.  575 U.S. at 772–73.

§ 1605.1.  It is therefore "entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity—as opposed, of course to the verity—of someone's religious beliefs in . . . the Title VII context."  *E.E.O.C. v. Alamo Rent-A-Car LLC*, 432 F. Supp. 2d 1006, 1011 (D. Ariz. 2006) (quoting *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)).  The consistency of the plaintiff's practices is relevant but not dispositive of the sincerity of belief.  *See, e.g.*, *Perticone v. Bell Motors LLC*, No. CV-16-02852-PHX-DGC, 2018 WL 333438, at *3 (D. Ariz. Jan. 9, 2018) (holding that the plaintiff's willingness to work on Sundays created an issue of fact); *Warren v. Shaw Grp., Inc.*, 825 F. Supp. 2d 1052, 1056 (D. Nev. 2011) (granting summary judgment for the defendant and holding that the plaintiff's inconsistent practices failed to create a genuine issue of fact as to sincerity of belief).  *But see, e.g.*, *Rivas v. Caesars Enter. Servs., LLC*, No. 2:19-cv-01637-KJD-DJA, 2021 WL 3572659, at *4 (D. Nev. Aug. 11, 2021) ("Perfection is not required to indicate the sincerity of a belief."); *EEOC v. Red Robin Gourmet Burgers, Inc.*, No. C04-1291JLR , 2005 WL 2090677, at *3 (W.D. Wash. Aug. 29, 2005) (holding that the plaintiff's testimony about his belief not to cover his tattoos created an issue of fact even though the plaintiff had a "practice of covering his tattoos during [a religious holiday], when he [was] cold, and while wearing long-sleeve clothing and costumes.")

Here, Plaintiff worked some Saturdays with his previous employer, Fann Contracting, and some with Defendant.  (Doc. 66-4); (Doc. 69-1 at 5–6.)  However, this fact alone does not establish the lack of a bona fide religious belief.  *See Rivas*, 2021 WL 3572659, at *4.  Plaintiff testified that he repeatedly told Defendant's employees about his religious belief, refused to work because of it, and was fired because of it.  (Doc. 78-1 at 36, 43, 137.)  Moreover, although Plaintiff admitted to working at least twelve Saturdays with Fann Contracting, (Doc. 86 at 6),[15] Plaintiff testified that he worked for Fann Contracting seasonally for three years, (Doc. 66-2 at 93), and that Fann had a policy of firing people who "refused to come in."  (Doc. 66-2 at 83.)  A reasonable juror could find that Plaintiff's inconsistent practices demonstrate his belief of not working the Sabbath is

---

[15] Defendant asserts that this number was as high as thirty-five.  (Doc. 65 at 12.)  Whether the number was twelve or thirty-five is not material to the Court's decision.

1    not sincerely held.  On the other hand, a reasonable juror could likewise find that Plaintiff's

2    past practices were justifiable due to economic duress or the threat of termination.  Because

3    there is an issue of fact, both Motions are denied as to this element.

### 2. Undue Hardship

5        The defendant bears the burden of proving an undue hardship.  *See Balint v. Carson*

6    *City*, 180 F.3d 1047, 1051 (9th Cir. 1999).  "An accommodation causes an 'undue hardship'

7    when it results in more than a de minimis cost to the employer." *Heller v. EBB Auto Co.*,

8    8 F.3d 1433, 1440 (9th Cir. 1993).  "Whether a proposed accommodation would cause

9    undue hardship must be determined in the particular factual context of the case." *Opuku-*

10   *Boateng v. California*, 95 F.3d 1461, 1468 (9th Cir. 1996).  "A claim of undue hardship

11   cannot be supported by merely conceivable or hypothetical hardships; instead, it must be

12   supported by proof of 'actual imposition on co-workers or disruption of the work routine.'"

13   *Tooley v. Martin–Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir. 1981) (quoting *Burns v.*

14   *S. Pac. Transp. Co.*, 589 F.2d 403, 406–07 (9th Cir.1978)).

15       Defendant repeatedly represented itself as a "24/7/365 operation."  (Docs. 66-5 at

16   4; 66-6 at 5; 66-7 at 2; 67-4 at 2; 67-9 at 2.)  Mitchell Martin ("Mr. Martin"), who oversaw

17   "the route planning and logistics," (Doc. 78-2 at 12), testified that weekly schedules varied

18   based on sales volume at a given location, (Doc. 67-6 at 5), and that although it was

19   "preferred" that deliveries were made during the workweek, Defendant "[didn't] really take

20   that into consideration as much as getting all of the work covered" when setting the

21   schedules.  (Doc. 67-6 at 6.)  Also, Mr. Astorga testified that "[he] need[ed] people to work

22   weekends . . . [because] there's no set schedules in our hiring in any – in any division";

23   that "there was nothing" Plaintiff could do without working on Saturdays; that "there's no

24   guarantee for – for Monday through Friday operations that [Defendant] has"; and that

25   schedules "will always change" because "it's never set in stone."  (Doc. 67-7 at 12, 15, 23.)

26       However, Mr. Astorga also testified that he did not "see if there was any way that

27   [Plaintiff] could continue to work at [Defendant] without working on Saturdays"; never

28   "look[ed] to see if there was any job [Plaintiff] could perform at [Defendant] without

working on Saturdays"; and never "[had] any conversations with Mr. Martin to see if there were any routes that [Plaintiff] could work that did not involve working on Saturdays." (Doc. 78-1 at 102–03.)  Moreover, Mr. Astorga testified that he only knew of "a few" drivers who started driving on Monday morning and could not finish their route by Friday, (Doc. 78-1 at 115), and Mr. Martin testified that as Regional Manager, Mr. Anaya could have "move[d] or unload[ed] to another driver and switch[ed] them around as needed," (Doc. 78-2 at 15), and that freight drivers could deliver to their destinations "24/7." (Doc. 78-2 at 16.)  Mr. Hall, an operations manager, (Doc. 78-2 at 37), testified that although the schedules were designed to start on Mondays, some drivers could pick up their loads on Sunday instead of Monday, (Doc. 78-2 at 31), and that drivers who picked up their loads on Sunday could finish on Thursdays, barring any unforeseen delays. (Doc. 78-2 at 35.)  He also testified that there were "all sorts of routes" depending on the week.  (Doc. 78-2 at 37.)

There is a genuine issue of material fact as to whether allowing Plaintiff not to work Saturdays constituted an "undue hardship."  Although Defendant certainly represented itself as a week-long operation, Mr. Astorga testified that he did very little to determine whether any accommodation was feasible—like, as Mr. Hall indicated, scheduling Plaintiff to pick up his truck on Sunday.  If there were truly "all sorts of routes" available during any given week, Defendant has not explained why Plaintiff could not have been given a shorter route.  Although it is true that Defendant could not account for unforeseen delays, Defendant has not conclusively shown that any of the proposed alternatives would have caused "more than a de minimis cost."  *Heller*, 8 F.3d at 1440.  However, the testimony of Defendant's employees about the difficulties of creating set schedules based on the varying sales volumes is sufficient to create a genuine issue of fact.  Therefore, both Plaintiff's and Defendant's Motions for Summary Judgment are denied on this issue.[16]

---

[16] Even considering the Hall and Astorga declarations, (Docs. 68 at 1–3; 66-1 at 1–3), their conclusory assertions do not undermine the Court's conclusion.  Both declarations assert that "Scheduling changes were not possible due to the varying nature and length of the routes Freight Drivers drove."  (Docs. 66-1 at 3; 68 at 2).  However, Mr. Martin testified that Mr. Anaya could make scheduling changes when needed, (Doc. 78-2 at 15), and Mr. Hall testified that some drivers could pick their loads up on Sundays even when the

### E.  Failure to Mitigate

"Title VII 'requires the claimant to use reasonable diligence in finding other suitable employment.'"  *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982)).  An employer raising a failure to mitigate damages defense has the burden of showing there were substantially equivalent jobs available, and the employee failed to use reasonable diligence in pursuing them.  *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 906 (9th Cir. 1994).

Although other circuit courts have held that a defendant need not prove the availability of substantially equivalent jobs if it can show that the employee failed to use reasonable diligence, the Ninth Circuit has not modified the general rule, which requires the defendant to show both elements.  *Odima*, 53 F.3d at 1497 (refusing to decide the issue); *see also Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991); *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990); *Quint v. AE Staley Mfg. Co.*, 172 F. 3d 1, 16 (1st Cir. 1999). This Court is bound by Ninth Circuit rule, which requires Defendant to show both elements to establish failure to mitigate.  *Farmer Bros*, 31 F.3d at 906; *see also Kawar v. JPMorgan Chase & Co.*, No. CV-08-0046-PHX-DGC, 2009 WL 1698918, at *6 (D. Ariz. June 16, 2009); *Besco v. City of Longview*, No. 3:15-CV-05493-RJB, 2016 WL 3227963, at *7 (W.D. Wash. June 13, 2016).  Defendant has failed to do so in this case.  Its Motion is silent as to the availability of substantially equivalent jobs, and thus it has failed to meet its burden on that element.  Summary judgment is denied on Plaintiff's failure to mitigate.

### F.  After-Acquired Defense

Defendant moves for summary judgment on its recently pleaded after-acquired

---

schedules began on Mondays.  (Doc. 78-2 at 31.)  Mr. Hall even confirmed that drivers picking up loads on Sundays were "typically" finished by Thursdays, unless there were unforeseen delays.  (Doc. 78-2 at 35.)  Neither declaration addresses why Plaintiff could not pick up his truck on Sunday, complete a five-day route, and finish by Thursday.  Even if Defendant could not guarantee there wouldn't be an unforeseen delay, Defendant has not established why this accommodation would pose "more than a de minimis cost" when it was the "typical" outcome.  (Doc. 78-2 at 35.)

1  evidence defense.[17]  "Where an employer seeks to rely upon after-acquired evidence of

2  wrongdoing, it must first establish that the wrongdoing was of such severity that the

3  employee in fact would have been terminated on those grounds alone if the employer had

4  known of it at the time of the discharge."  *McKennon v. Nashville Banner Pub. Co.*, 513

5  U.S. 352, 362–63 (1995).  The burden of proof is on the employer to "establish not only

6  that it *could* have fired an employee for the later-discovered misconduct, but that it would

7  in fact have done so."  *O'Day v. McDonnel Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th

8  Cir. 1996).

9      Defendant provides no evidence that it would have fired or refused to hire Plaintiff

10  had it known of his prior criminal convictions.  The only evidence on this point, portions

11  of Mr. Stieber's declaration, have been stricken and will not be considered.  The rest of the

12  evidence on this issue concerns whether Plaintiff lied on his job application, but that fact

13  is immaterial without a showing that Defendant would have acted on such information.

14  Therefore, Defendant's Motion is denied.  However, the Court notes that because

15  Defendant has recently amended its Answer, and because Defendant was misled

16  concerning this issue, Defendant will be allowed to put on any disclosed witness to testify

17  as to Defendant's practices regarding prior convictions at trial.

18      **G.  Legitimate Business Reason**

19      Plaintiff also argues that he is entitled to summary judgment on Defendant's ninth

20  affirmative defense: That Plaintiff was fired not because of his religious practice, but

21  because of other reasons.  (Doc. 14 at 8); (Doc. 69-1 at 19–20.)  Defendant does not seem

22  to offer any evidence or argument to the contrary.[18]  Moreover, the Court finds this defense

23  superfluous.  As discussed above, the transcript establishes that Plaintiff was (allegedly)

24  fired for being unable to work on Saturdays.  Whether it was unlawful for Defendant to do

25  so rests largely upon whether it would pose an undue hardship, which remains an issue in

26  this case.  Therefore, because this defense is superfluous, and because Defendant offers no

27  ───────────────
   [17] Defendant recently amended its Answer to add the defense.  (Doc. 100.)

28  [18] Mr. Astorga testified to as much, admitting that he never had any discussions with
   anyone about terminating Plaintiff for his job performance.  (Doc. 78-1 at 105–06.)

argument against dismissal, the Court grants Plaintiff's Motion for Summary Judgment on this ground.

## CONCLUSION

Because Plaintiff has established a genuine issue of material fact as to all federal claims and their elements, Defendant's Motion for Summary Judgment is denied as to those claims.  Defendant's Motion is granted as to the state-law claims because they are barred by the statute of limitations.  Because Plaintiff has established the absence of a genuine issue of material fact, Plaintiff's Motion is granted as to (1) his prima facie case for retaliation; (2) Defendant's ninth affirmative defense; and (3) two elements of his prima facie case for failure to accommodate.  The rest of Plaintiff's Motion is denied.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 69) is **GRANTED** in part and **DENIED** in part as to Count III.  Plaintiff's Motion is **GRANTED** as to (1) whether Plaintiff engaged in protected activity; (2) whether Plaintiff suffered an adverse employment action; and (3) causation.   The Motion is **DENIED** as to whether Defendant had a legitimate, nonretaliatory reason for Plaintiff's termination.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 69) is **GRANTED** in part and **DENIED** in part as to Count II.  Plaintiff's Motion is **GRANTED** as to (1) whether Plaintiff informed Defendant of his religious belief; and (2) whether Defendant subjected Plaintiff to an adverse employment action. The Motion is **DENIED** as to the existence of a bona fide religious belief and as to undue hardship.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 69) is **GRANTED** as to Defendant's Ninth affirmative defense; and **DENIED** as to Counts I, IV, V, VI, and Defendant's Thirteenth affirmative defense.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS FURTHER ODERED** that Defendant's Motion for Summary Judgment (Doc. 65) is **GRANTED** in part and **DENIED** in part.  Defendant's Motion is **GRANTED** as to the state-law claims, Counts IV, V, VI; and **DENIED** as to all other counts.

Dated this 14th day of December, 2021.

G. Murray Snow
Chief United States District Judge